**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYREE WALLACE,** | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-1789** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.*, | : | |
| Defendants. | : | |

**Perez, J.**                                                                          **June 30, 2026**

<u>**MEMORANDUM**</u>

Plaintiff Tyree Wallace spent over twenty-six years in prison for his conviction of the robbery and murder of Young Su Kang.  In 2024, after evidence exonerating Wallace came to light, his conviction was vacated in the Philadelphia Court of Common Pleas, and a new trial was ordered.  Recognizing the difficulty of proving his innocence at a new trial, Wallace accepted the Commonwealth's plea offer and pled guilty to conspiracy to commit murder in the third degree. At his sentencing for the third-degree murder conviction, Wallace was given credit for time served and was released from prison that same day.

Now, Wallace brings this action under § 1983 alleging that he was wrongfully convicted for the robbery and murder of Kang because of serious misconduct by Philadelphia Police Department officers.  The City and many of the officers move to dismiss the suit.  Their motion is granted in part and denied in part.  Counts I and V against the individual officers are dismissed with prejudice because Wallace's malicious prosecution claims fail. Counts II and III remain because Wallace states viable claims against the individual defendants for fabrication of evidence

1

and withholding exculpatory material, and for civil rights conspiracy.[1]

## I.    BACKGROUND [2]

On October 27, 1997, Young Su Kang, the owner of a South Philadelphia convenience store called the Salt & Pepper Deli, was shot and killed during an attempted robbery.  Amended Complaint ("AC"), ECF 30 ¶ 29.  Two years later, in October 1999, Tyree Wallace, Raheem Shackleford, and Matthew Corprew were convicted for Kang's robbery and murder.  *Id.* ¶ 5, n.1.

The Commonwealth's case against Wallace consisted exclusively of the testimony of three witnesses: Lavan "Van" Griffin, Brian Brooks, and James Davis.  *Id.* ¶ 31.  There was no physical or forensic evidence that definitively placed Wallace at the scene of the crime.  *Id.* ¶ 30.  Since these three witnesses testified at Wallace's trial, the testimony of each has either been recanted or conclusively discredited.  *Id.* ¶ 31.

### A. Testimony of Lavan "Van" Griffin

Griffin was an employee at Kang's convenience store.  *Id.* ¶ 60.  It was Griffin's first day of work for Kang on the day that he was murdered.  *Id.*  On November 5, 1997, a few days after the murder, Detectives Myles and Patterson interviewed Griffin.  *Id.*  In 2017, Griffin came forward with a certification stating that, at that interview, he was coerced into identifying Shackleford and Wallace as the perpetrators of the robbery and shooting at Kang's store.  *Id.* ¶ 69.

---

[1] The Court declines to dismiss the entire Amended Complaint because Wallace has not had a favorable termination of his 1999 conviction.  *See infra* Part IV.B.; *see also* Motion to Dismiss ("MTD"), ECF No. 34 at 13.  Aside from arguing that the entire Amended Complaint should be dismissed, Defendants do not argue that Count IV—Wallace's municipal liability claim—should be dismissed.  Therefore, Count IV also remains.

[2] All facts are taken from the Amended Complaint unless otherwise noted. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("[I]n ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record."). The Court treats the factual allegations in the Amended Complaint as true, as is required on a motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010) ("We must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint.").

In the interview, Griffin kept telling the officers that he did not see who did the shooting, but Detectives Myles and Patterson told Griffin that Shackleford and Wallace were involved in the robbery and pointed out their photos to him. *Id.* ¶ 71.

At Wallace's trial, Detective Boyle pressured Griffin to testify as to who committed the shooting, despite Griffin's insistence that he did not see the shooter on the night of the robbery. *Id.* ¶ 72. Detective Boyle threatened to personally go to the judge presiding over Griffin's prosecution in a separate case and make sure that Griffin received the harshest penalty possible if he did not testify against Wallace. *Id.*

### B. Testimony of Brian Brooks

On October 27, 1997, the afternoon before Kang's murder, Brian Brooks was arrested and brought into the police department in connection with an unrelated domestic violence incident. *Id.* ¶ 32. That day, in an interview with Detectives Dougherty and Feldmeyer, Brooks confessed to three armed robberies that he had committed. *Id.* ¶ 34. Dougherty and Feldmeyer then pushed Brooks to provide false information about other people involved in his crimes. *Id.* Wallace was one of the individuals Brooks implicated as an accomplice. *Id.* At this interrogation, Brooks said nothing about a plan to rob the Salt & Pepper Deli later that evening. *Id.* ¶ 36. Brooks was arrested for the armed robberies he committed but, five weeks later, was released in exchange for his cooperation with the police. *Id.* ¶ 38.

On February 18, 1998, Brooks was arrested for committing another knife-point robbery. *Id.* ¶ 40. The following day, he requested to speak with homicide detectives about the Kang murder. *Id.* ¶ 41. Brooks knew that Detective Boyle wanted to arrest someone for the Kang murder because Boyle had brought Brooks into the homicide unit requesting information about this murder a few weeks after Brooks' release from custody. *Id.* ¶ 39. At that time, Brooks told

3

Boyle that he did not have any information about who was involved in the Kang murder. *Id.* Now that Brooks was again in custody for another armed robbery, he was eager to find a way to reduce the amount of jail time he was at risk of receiving. *Id.* ¶ 41. On February 19, 1998, Brooks gave a statement to Detectives Boyle and Campbell setting forth in detail a supposed plan to rob the Salt & Pepper Deli made by Brooks, Wallace, and Corprew the day before the murder. *Id.*

In October 1999, at Wallace's trial, Brooks initially testified consistently with his February 1998 statement. *Id.* ¶ 51. Moments after stepping off the stand, however, Brooks confessed to Sheriff John Hamilton that he had lied in his prior testimony. *Id.* ¶ 52. Right before closing arguments, Brooks retook the stand and recanted his initial testimony. *Id.* ¶ 54. This time, Brooks testified that when he first told Detective Boyle that he did not know anything about the robbery and shooting of Kang, Boyle told Brooks that he and his brother Aubrey were "going down" for the crime. *Id.* ¶ 54. Brooks testified that when he gave his statement to the police implicating Wallace and Corprew, he adopted the "story line" that Boyle had previously told him regarding the Kang murder. *Id.* ¶ 55. He also testified that his statement about the plan to rob the store the day before the shooting was a lie. *Id.* ¶ 56.

Brooks was a confidential informant for the police and the City of Philadelphia in this case. *Id.* ¶ 59. On September 25, 1998, Brooks negotiated a generous plea agreement on his myriad armed robbery charges, receiving a sentence of five to ten years even though he was facing more than one hundred years of imprisonment based on his extensive charges. *Id.* ¶ 49. Wallace's counsel asked Brooks and the Commonwealth whether Brooks was a cooperating witness before Wallace's trial and at trial. *Id.* Despite this, the Commonwealth did not disclose Brooks' status as a cooperating witness to Wallace and his counsel. *Id.*

### C. Testimony of James Davis

The third witness who testified against Wallace at trial was James Davis. Davis was 16 years old at the time of Kang's murder, and on February 13, 1998, he was brought into the homicide unit for questioning about the robbery and murder at the Salt & Pepper Deli. *Id.* ¶ 77. Detectives Boyle and Dembeck fabricated a statement that they forced Davis to endorse in this interview. *Id.* ¶ 82. In this statement to the police, Davis claimed that Wallace and Shackleford approached Davis, and his friends John Muldrow and Rick Wilson, at Davis's house on the evening of the murder, asking if they wanted to rob Kang at his Salt & Pepper Deli. *Id.* ¶ 78. Davis also stated that he saw Wallace running down Ellsworth Street at around 11:10 p.m. on the night of the murder, holding a gun that Shackleford had shown him and his friends less than an hour earlier. *Id.* ¶ 79. Davis testified consistently with these statements at trial. *Id.* ¶ 81.

Three days after obtaining Davis's statement, Detectives Boyle, Dembeck and Piree interviewed Muldrow, who contradicted Davis's statement in two important ways. First, Muldrow stated that only Shackleford, and not Wallace, approached Muldrow and Davis about a plan to rob Kang at the Salt & Pepper Deli on October 27, 1997. *Id.* ¶ 83. Second, Muldrow stated that he went home shortly after Shackleford came to Davis's house at 6:00 p.m., contradicting Davis's statement that he was with Muldrow until 10:30 p.m. that evening. *Id.* ¶ 85.

## II.    PROCEDURAL HISTORY

After his initial trial, Wallace was sentenced to imprisonment for life. *Id.* ¶ 5, n.1. Twenty-four years later, Wallace filed a petition for post-conviction relief in the Philadelphia Court of Common Pleas raising new evidence of a *Brady* violation and new evidence of his innocence. *Id.* ¶ 95. On June 12, 2024, Judge Scott DiClaudio vacated Wallace's convictions for second-degree murder, robbery, conspiracy, and possession of a criminal instrument. *Id.* ¶ 97. His sentence to

5

life imprisonment was also vacated, and he was ordered a new trial. *Id.*

At that stage, the Commonwealth was unwilling to recommend a full exoneration for Wallace and offered only to recommend an exoneration of the original second-degree murder conviction in exchange for a plea to a lesser charge of conspiracy to commit murder in the third degree. *Id.* Recognizing that he would have difficulty proving his *Brady* claims because the documents he wanted to rely on had been misplaced or destroyed by the Commonwealth, and that the Court could not rely on Shackleford's testimony exonerating Wallace because of Shackleford's reluctance to testify on the record, Wallace accepted the plea offer and pled guilty to conspiracy to commit murder in the third degree. *Id.* ¶ 98.

On November 4, 2024, Wallace was resentenced by Judge DiClaudio and given credit for time served. *Id.* ¶ 99. He was released from prison that same day.

Following his release, Wallace commenced this civil action under 42 U.S.C. § 1983 and Pennsylvania law against the City of Philadelphia, Detective Boyle, Detective Dougherty, Detective Patterson, Detective Campbell, Detective Piree, Detective Dembeck, Detective Myles, Detective Feldmeyer and Detective Fitzgerald. The Amended Complaint asserts five counts: (1) a Fourth and Fourteenth Amendment malicious prosecution claim under § 1983 against all Individual Defendants; (2) a Fourteenth Amendment due process claim under § 1983 against all Individual Defendants; (3) a civil rights conspiracy claim under § 1983 against all Individual Defendants; (4) a municipal liability claim under § 1983 against the City of Philadelphia; and (5) a malicious prosecution claim against all Individual Defendants under Pennsylvania state law.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  A claim is plausible when the pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  Although the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, it need not accept legal conclusions or unsupported inferences.  *Id.* at 678–79; *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016).

## IV.    DISCUSSION

### A.  Wallace's Malicious Prosecution Claims are Dismissed.

#### 1.  Wallace Fails to Meet the "Favorable Termination" Element of Malicious Prosecution Under Federal or State Law.

Defendants argue that Wallace fails to meet the elements of a malicious prosecution tort under federal or state law.  MTD at 16.  To state a malicious prosecution claim under § 1983, Wallace must plead: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (cleaned up).  Similarly, to prove a malicious prosecution claim under Pennsylvania law, Wallace must show that the defendants "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff."  *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. 1988).

A malicious prosecution tort requires final termination of a criminal proceeding in favor of the accused; thus, a plaintiff with a valid criminal conviction for the same underlying conduct fails to prove a necessary element of malicious prosecution.  *See Poventud v. City of New York*, 750 F.3d 121, 130-31 (2d Cir. 2014) (discussing *DiBlasio v. City of N.Y.*, 102 F.3d 654 (2d Cir. 1996),

which held that a malicious prosecution claim failed where, on retrial following habeas relief, the defendant was convicted for a lesser count based on charges arising from the same criminal conduct); *see also Junod v. Bader*, 458 A.2d 251, 253 (Pa. Super. Ct. 1983) (explaining that malicious prosecution claim fails under Pennsylvania law without a showing that the underlying criminal proceedings terminated in plaintiff's favor).

Here, Wallace's guilty plea to third-degree murder is a valid conviction that does not constitute a favorable termination of the proceedings against him. *See Thompson v. Clark*, 596 U.S. 36, 49 (2022) ("[W]e hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction."). Wallace's federal and state law malicious prosecution claims fail as a matter of law because he pled guilty to third-degree murder and thus fails to meet the favorable termination requirement. Accordingly, Counts I and V of the Amended Complaint are dismissed.

### 2. The *Heck* Doctrine Also Bars Wallace's § 1983 Malicious Prosecution Claim.

Defendants also argue that Wallace's § 1983 malicious prosecution claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). MTD at 13-14. *Heck* held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486-87. "The purpose of this favorable termination requirement is to avoid a situation where a plaintiff's successful challenge to events connected with his conviction or sentence in a § 1983 action could result in 'two conflicting resolutions.'" *Herrera v. Agents of Pa. Bd. of Prob.*

*& Parole*, 132 F.4th 248, 255-56 (3d Cir. 2025) (quoting *Heck*, 512 U.S. at 484).  Essentially, "*Heck* bars § 1983 actions where success in the § 1983 action would implicitly call into question the validity of conviction or duration of sentence." *Id.* at 255 (cleaned up).

A malicious prosecution claim is incompatible with a subsequent conviction because a required element of a malicious prosecution suit is termination of the proceedings in favor of the accused. *See Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014).  Therefore, "[i]n the context of § 1983 malicious prosecution cases, *Heck*'s bar is coextensive with the favorable termination requirement." *Poventud*, 750 F.3d 121 at 131; *see Carson v. City of Phila.*, No. 23-2661, 2024 WL 3792223, at *6 (E.D. Pa. Aug. 13, 2024) (dismissing § 1983 malicious prosecution claim because plaintiff failed to meet the favorable termination element, and the claim was barred by *Heck*, where plaintiff pled guilty to third-degree murder after vacatur of his first-degree murder conviction).  A successful malicious prosecution suit and a valid conviction for the same underlying conduct would impermissibly result in "two conflicting resolutions," so *Heck* bars Wallace's § 1983 malicious prosecution claim.  *Herrera*, 132 F.4th at 256 (quoting *Heck*, 512 U.S. at 484).

**B.  The *Heck* Doctrine Does Not Bar Wallace's Entire Amended Complaint.**

Defendants argue that Wallace's entire Amended Complaint should be dismissed because of the *Heck* doctrine.  MTD at 13.  Wallace's procedural-based claims are not *Heck*-barred, however, so the Court will not dismiss the entire Amended Complaint.  The Third Circuit has not yet addressed how *Heck* applies in so-called two-conviction cases, where a defendant pleads guilty to a lesser-included offense after their initial conviction has been vacated.[3]  In *Poventud*, the Second Circuit held that a *Brady*-based § 1983 claim was not barred by *Heck* in a two-conviction

---

[3] This issue is currently pending before the Third Circuit in *Dennis v. City of Philadelphia*, 3d Cir. Case Nos. 24-2596, 24-2670.

9

case. 750 F.3d 121 at 138. The *Poventud* court reasoned that the plaintiff's § 1983 *Brady* claim was compatible with the validity of his subsequent conviction because his "claim is one of process." *Id.* A successful procedural claim does not depend on an individual's ultimate guilt or innocence, but upon due process and the fairness of the trial. *See Dennis v. City of Phila.*, 379 F. Supp. 3d 420, 430 (E.D. Pa. 2019).

Therefore, procedural § 1983 claims are not barred by *Heck* even if the plaintiff has a valid second conviction for the same underlying conduct. "*Heck* does not automatically bar a § 1983 claim simply because the processes of the criminal justice system did not end up in the plaintiff's favor. A plaintiff need not prove that *any* conviction stemming from an incident . . . has been invalidated, only a conviction that could not be reconciled with the claims of his civil action." *Poventud*, 750 F.3d at 132 (quoting *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)); *see also Jackson v. Barnes*, 749 F.3d 755, 758 (9th Cir. 2014) (concluding plaintiff was not *Heck*-barred from bringing a § 1983 suit where he challenged the reversed conviction which relied on the use of illegally obtained evidence in his first trial but did not challenge the result of his second trial where the violations did not occur); *Carson*, 2024 WL 3792223, at *9 (granting motion to dismiss malicious prosecution claim because of *Heck* but allowing a Fourteenth Amendment claim, civil rights conspiracy claim, and a municipal liability claim to proceed, to the extent they were premised on fabrication of evidence, *Brady* violations, and failure to discipline).

Wallace alleges procedural defects in his first trial: he alleges that the individual Defendants fabricated evidence against him by coercing witnesses—including Griffin and Brooks—to identify him as a perpetrator of the Kang murder, and he alleges that the individual Defendants withheld exculpatory evidence from him, such as Brooks's cooperation with the police. AC ¶¶ 50, 59, 69. These allegations relate to the procedural fairness of Wallace's initial

10

trial. The veracity of the allegations may have no bearing on the validity of Wallace's second conviction. Wallace's procedural-based allegations must be material for a *Brady*-based § 1983 claim to exist, such that there is a likelihood that the fabrication of evidence and withholding of exculpatory evidence would have changed the outcome of his trial. *See United States v. Cordo*, 324 F.3d 223, 228 (3d Cir. 2003) (finding no *Brady* violation where the plaintiff failed to show a reasonable probability that the *Brady* material could have changed the outcome at trial). Wallace may have pled guilty in 2024 because of evidence untainted by procedural defects. In such a case, success on any procedural claims related to his first trial would have no bearing on his second conviction.[4] At the motion to dismiss stage, the court "cannot go outside of the pleading to make [a] factual finding" about the evidentiary basis for Wallace's second conviction. *Gladden v. City of Phila.*, No. 21-4986, 2022 WL 605445, at *7 (E.D. Pa. Feb. 28, 2022).

Accordingly, Defendants' motion to dismiss the entire Amended Complaint because Wallace has not had a favorable termination of his 1999 conviction is denied.

### C. <u>Wallace Adequately Pleads Personal Involvement of the Individual Defendants in Support of His Fourteenth Amendment Claim.</u>

Defendants next move to dismiss Detectives Dougherty, Patterson, Myles, Campbell, Dembeck, and Feldmeyer from the case because Wallace failed to state a Fourteenth Amendment deprivation of due process and denial of a fair trial claim against them. MTD at 19. A defendant in a § 1983 action must be "personally involved, through personal direction or actual knowledge and acquiescence, in the wrongs alleged with respect to [the] claims." *Thomas v. Indep. Twp.*, 463 F.3d 285, 298 (3d Cir. 2006). At this early stage of the case, Wallace need only plead facts that,

---

[4] Wallace may encounter a problem if success on his fabrication of evidence or *Brady* claims undermine the factual basis of his second conviction, but the Court can only assess the factual basis of his second conviction after discovery. *See Maldonado v. City of Phila.*, No. 22-3474, 2023 WL 4685967, at *7 (E.D. Pa. July 21, 2023).

taken as true, "allow[] the court to draw the reasonable inference that" each defendant knew of and acquiesced to the alleged misconduct. *Iqbal*, 556 U.S. at 678. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Wallace's Amended Complaint alleges enough to support a reasonable inference that each of these detectives knew of and acquiesced to the alleged misconduct.

In his Amended Complaint, Wallace alleges that each officer either fabricated evidence, coerced a witness into making false statements, withheld, concealed, and suppressed material exculpatory and impeachment evidence, or acquiesced in this conduct. Resp. Br., ECF 41 at 15. More specifically, Wallace alleges that Feldmeyer and Dougherty interviewed Brian Brooks about a string of armed robberies a few hours before Kang's murder and that they "knowingly pushed Brooks to provide false information" that "they could use to clear criminal cases in that neighborhood." AC ¶ 34. Patterson and Myles allegedly forced witness Lavan Griffin to pick Wallace from a photo array and would not let him leave until he signed the photo identification. *Id.* ¶ 71. Campbell and Boyle interviewed Brooks about the Kang murder when Boyle allegedly coerced Brooks into reading a fabricated statement implicating Wallace by telling Brooks that "[he] and [his] brother Aubrey were 'going down' for the crime." *Id.* ¶ 54. And Dembeck allegedly coerced a statement from witness James Davis that implicated Wallace and detailed an intricate plan to rob Kang's store. *Id.* ¶¶ 77-78, 82.

For now, these allegations are enough to plead Dougherty, Patterson, Myles, Campbell, Dembeck, and Feldmeyer's knowledge of and acquiescence to misconduct in the investigation of the Kang murder. The motion to dismiss these defendants will be denied.

### D. **Wallace Adequately Pleads A Civil Rights Conspiracy Claim.**

Finally, Defendants assert that Wallace has not stated a valid civil rights conspiracy claim against any of the individual Defendants.  To state a claim for a civil rights conspiracy pursuant to § 1983, a plaintiff must allege: "(1) two or more persons conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States." *Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (cleaned up).  "This generally requires a plaintiff to plead the existence of an agreement or meeting of the minds to violate their constitutional rights." *Gaskins v. City of Phila.*, 806 F. Supp. 3d 507, 519 (E.D. Pa. 2025).

Wallace argues that "[t]he Court can infer a meeting of the minds occurred in this case—the only way the Individual Defendants would be able to build their false story and obtain coerced statements from witnesses is through the transmission of information from one another."  Resp. Br. at 21.  Wallace alleges that Detectives Feldmeyer and Dougherty initially identified Brooks as someone susceptible to coercion for providing false information to "solve" crimes when Brooks was brought to the police station because of a domestic violence incident.  AC ¶ 34.  Detectives Feldmeyer and Dougherty allegedly shared information about Brooks with Detectives Boyle and Campbell, enabling them to later coerce a statement from Brooks implicating Wallace in the Kang murder.  *Id.* ¶ 45.  Therefore, Wallace explicitly alleges that Detectives Boyle, Campbell, Feldmeyer and Dougherty participated in a conspiracy to violate Wallace's constitutional rights.

With respect to the remaining individual Defendants, Wallace alleges that Detectives Myles and Patterson worked together to coerce witness Griffin into identifying Wallace from a photo array and Detectives Boyle and Dembeck worked together to fabricate a false statement,

13

which they forced witness Davis to adopt. *Id.* ¶¶ 71, 82. These allegations adequately allege a conspiracy between Myles and Patterson, and Boyle and Dembeck, to fabricate evidence implicating Wallace in their investigation of the Kang robbery and murder.

Although Wallace's conspiracy claim requires further factual development before trial, "in light of the overarching story told in the light most favorable to [Wallace]," Wallace has plausibly alleged a conspiracy on the part of the individual Defendants. *Gaskins*, 806 F. Supp. 3d, at 519; *see also Maldonado*, 2023 WL 4685967, at *8 (noting that "[c]ivil rights conspiracy claims normally survive a motion to dismiss where the constitutional claims do too").

## V.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss will be granted in part and denied in part.  Counts I and V are dismissed with prejudice. An appropriate order follows.